FREDERICK A. VANDYKE, Jr., *v.* DAVID S. BROWN and others, and the NEW ENGLAND MANUFACTURING CO.

In March, 1848, S. G. P. filed a bill against the N. E. Man. Co., for the foreclosure of a mortgage executed by the said Co. to him. In January, 1849, V. presented a petition to the Court, setting forth, that S. G. P., when he received the said mortgage, gave a declaration of trust, that he received said mortgage for the purpose of securing to a certain bank the payment of certain drafts drawn by said Co. on D. S. B. & Co., and accepted by them, which had been discounted by the said bank for the benefit of the said N. E. Man. Co., and that, in case the said drafts should be paid by the said D. S. B. and Co , on account of the said N. E. Man. Co., before the said Man. Co. should have placed funds in the hands of the said D. S. B. & Co. to meet the same, then the said bond and mortgage to be held by said S. G. P. in trust to secure to said D. S. B. & Co. the amount which should remain due to them on account of their payments made on the said drafts; with power to assign the said bond and mortgage to either of the parties that might be entitled to the same. That in May, 1847, the petitioner became the owner of 62 shares of the stock of said Man. Co. (And stating facts going to show that nothing was due on the said mortgage.) That D. S. Brown has the entire control of said N. E. Man. Co. and will not allow any answer to be put in or defence to be made to the bill exhibited by the said S. G. P. On this petition, the Court ordered, that the petitioner be permitted, as one of the stockholders of the N. E. Man. Co., to answer the said bill, and that he be made and deemed a party thereto for that purpose.

An answer was put in accordingly; and replication filed; testimony taken; and on the hearing of the cause, the Chancellor ordered, that an account be taken between said D. S. B. & Co. and the N. E. Man. Co.

A. & B., owning a manufacturing establishment, obtained an act incorporating a company, and subscribed, each, for half of the stock, except four shares, which were put in the names of four other persons, for the purpose of having a sufficient number of persons to organize under the act. After the organization of the company, by the election of directors, A. and B. continued to conduct the business, as before the act, by and between themselves as individuals, the company not acting by its board.

*Held;* That they were bound to conduct their business as a corporation, and were to be governed by the law of corporations.

Commission merchants in Philadelphia to whom goods manufactured by a company in Trenton were sent, in their brown state, to be sold, sent them to a printing establishment in Pennsylvania and had them printed, and then sold them.

*Held;* That where the printing was advantageous to the Man. Co. they should have the benefit; but where the printing caused a loss the Man. Co. should be credited with the value of the goods in their brown state.

The commission merchant in Philadelphia, who was to receive 5 per cent. for sale and guarantee, sent, without direction to do so, some of the goods to New York and Boston, for sale, and paid 5 per cent. for sale and guarantee.

*Held ;* That a charge by him of two-and-a-half per cent, in addition, was inadmissible.

The rule that, where the complainant goes for a general account, and it turns out that there has been a settled account, he must amend, and surcharge and falsify, supposes, that an account has been given by the defendant.

The bill, filed October 8th, 1849, states, that on the 3d March, 1845, Stacy G. Potts filed his bill against " The New England Manufacturing Company," setting out, that, on the 22d October, 1846, the said Manufacturing Company were indebted to said Potts in $16,398.01, and, to secure the payment thereof, executed and delivered to said Potts a bond of that date, conditioned for the payment of said sum as follows : $5,396.15 in six months ; $5,448.44 in eight months ; $5,553.32 in one year ; and, to secure the payment of said bond, executed a mortgage on all their real estate, and on the fixtures and machinery of the mill of said Manufacturing Company ; and praying foreclosure.

That this complainant, on or about January 1, 1849, presented a petition to this Court, setting forth that such bill had been filed by said Stacy G. Potts, and stating, that, though the said mortgage, on its face, appears to be a mortgage to said Potts as an individual, in his own right, and free from any trust, yet that, at the time of the execution thereof, the said Potts executed a declaration of trust, by which, &c., (setting it out.) This writing declares that the said bond and mortgage were executed to the said Potts, in trust for the purpose of securing to the Mechanics' & Manufacturers' Bank of Trenton the payment of three certain drafts, drawn by the said N. E. Manufacturing Co. on David S. Brown & Co., of Philadelphia, and accepted by them, which said drafts had been discounted by the said Bank for the benefit and at the request of the said N. E. Manufacturing Co. ; the first whereof is for $5,396.15, bearing even date with said bond, payable in 6 months ; the second, for $5,448.44, of same date, payable in 8 months ; and the third, for $5,553.32, of same date, payable in one year ; and that, in case the said drafts shall be paid by the said D. S. Brown & Co., on account of the said New England Manufacturing Co., before the said Manufacturing Co. shall have placed funds in the hands of said

David S. Brown & Co. to meet the same, then the said bond and mortgage to be held by the said Potts in trust for the purpose of securing to the said Brown & Co. the amount which shall remain due to them on account of their payments made on the said drafts; with power to assign the said bond and mortgage to either of the parties who may be entitled to the same.

That the said petition of this complainant further showed, that when the said drafts, respectively, became due, the said D. S. Brown & Co. paid the said drafts, on account of the said New England Manufacturing Co., before said Co. had placed funds in the hands of said D. S. Brown & Co. to meet the same; whereby, in pursuance of said declaration of trust, the said D. S. Brown & Co. became interested in the said mortgage as *cestius que trust*, and the said Potts became trustee for said D. S. Brown & Co. And that the individuals composing the firm of D. S. Brown & Co. are David S. Brown, Robert F. Walsh, George F. Peabody, and Charles S. Peaseley.

That said petition further showed that no power is granted by the act of incorporation of the said New England Manufacturing Company or its directors to execute a mortgage. That said New England Manufacturing Co. was chartered on the 4th March, 1842. That it is provided by the 2d article of the by-laws that the officers of the Co. shall be a President, who shall be President of the Directors, and four other Directors, a Clerk and Treasurer, to be chosen annually, by ballot, for the ensuing year, and until others are chosen their successors and have accepted; and that no one shall hold any office, except that of Clerk, who is not a stockholder.

That the said article of the by-laws provides, that the stock shall consist of 128 shares, of $500 each. That at every Stockholder's meeting each share should be entitled to one vote, except that no stockholder, in his own right, should be entitled to more than 20 votes, as provided by the act of incorporation. That a stockholder might empower any other stockholder to vote for him, in his absence, by a written order or request. That said petition further showed, that the pretended meeting of the Board of Directors at which it is pretended, that some resolution

was passed authorizing the making of said mortgage, was never legally convened by any proper notice given to the said directors. And that the said pretended meeting was not held at the usual place of business of the Co. at South Trenton, but in the office of Stacy G. Potts, Esq., in Trenton.

That said petition further showed, that at said pretended meeting there was no lawful quorum of directors competent to do business, the said meeting being composed of David S. Brown and John H. Shortridge only. That said Brown was directly interested in the said mortgage, and therefore not competent to vote on any resolution to authorize, or direct or confirm the making or executing the said mortgage.

That, previous to the act incorporating the said Co., the said D. S. Brown & William R. Hanson owned the cotton mill and manufacturing establishment, situated on the water power in South Trenton, known as the cotton mill of Brown & Hanson; and that, after the said act of incorporation, the said D. S. Brown and William R. Hanson subscribed for 62 shares, and Jacob Kline for one share, Charles Parker for one share, John B. Shortridge for one share, and John C. Benson for one share. That said Kline, Parker, Shortridge and Benson were merely nominal stockholders, never having paid up the amount of their respective shares ; and never having paid but $5 each on their respective shares.

That, after said stock was subscribed, the said cotton mill and manufacturing establishment of said Brown & Hanson were conveyed, by deed, to the said New England Manufacturing Co. of South Trenton. That said Kline held his one share of stock until his death, when it was transferred by his Administrators to the said Hanson ; and that said Brown procured an assignment from said Parker of his one share of stock ; thus preserving the equality of interest and power of the said D. S. Brown and William R. Hanson.

That, in May, 1847, the said William R. Hanson, for a valuable consideration, transferred to said petitioner 62 shares of said stock, reserving to himself only one share thereof.

That afterwards, and shortly before the last Wednesday of

June, 1848, the day on which, by the first article of the by-laws of the Co., the annual meeting of stockholders for the choice of officers was to take place, the said Brown, for the purpose of obtaining the exclusive control of the Co., transferred to his partner in trade, Robert F. Walsh, one share of said stock, and to Samuel B. Fry, one of his clerks in his counting room, 12 shares, and to his nephew, William M. Brown, and to William Baugh, each, 15 shares. That said petitioner believes, that said Walsh, Fry, William N. Brown and Baugh never paid anything to said D. S. Brown for said shares so transferred to them, and that they held the same only in trust for D. S. Brown, and to enable him by the use of their names to evade the 3d article of the by-laws, and to give more votes, by the use of their names, at any meeting of the stockholders, than he could have done if this whole number of shares had continued to stand in his own name. That, although there had been no election of directors since July 8, 1844, yet, soon after said transfers, the said D. S. Brown caused a notice to be given to the stockholders, that there would be an annual meeting of the stockholders, at Trenton, on the 28th of June then next; which notice, the the petitioner believes, did not designate the object of said meeting.

That said petition showed, that at said annual meeting no stockholders attended except said D. S. Brown and John H. Shortridge, who was then a clerk of said D. S. Brown & Co.; and that said D. S. Brown and J. H. Shortridge adjourned said meeting of stockholders to July 12, 1848. That, although notice that an adjourned meeting of stockholders would be held on said 12th July was served on the stockholders, yet that the petitioner avers, that said notice did not designate the object of said meeting, nor in any way indicate that it was the intention of said meeting to proceed to an election of directors.

And said petition further showed, that, at said adjourned meeting, on said 12th July, none of the stockholders attended except the said David S. Brown, Robert F. Walsh, John H. Shortridge and William R. Hanson. That, as soon as it was intimated by D. S. Brown that it was the object of the stock-

holders present to proceed to an election of directors, the said Hanson protested against their proceeding to such election, inasmuch as it was not indispensable to their interest and the purposes of the Co. that an election for directors should be held at that time, no such election having been held for several years; that it would be unjust, if not illegal, as Mr. Vandyke's interest in the Co., being about one-half of the whole stock, was not represented; and said Hanson therefore informed said meeting that, if they persisted in proceeding to an election, he should decline voting and withdraw from said meeting. That said meeting did persist in proceeding to an election, and that said Hanson thereupon withdrew from said meeting; and the said Brown, Walsh and Shortridge did proceed to an election of directors; and did declare that they had elected William R. Hanson, D. S. Brown, F. A. Vandyke, Robert F. Walsh and William Burgh directors.

That said petition further showed, that the said stockholders, after said Hanson had withdrawn from said meeting, proceeded to pass the following resolution, viz: " Resolved, That the report to be made under and in compliance with the foregoing resolutions be made with a view of making, if necessary, as ready a sale of the property of the Co., whether under a foreclosure of the mortgage or otherwise, as circumstances will admit of, for the purpose of discharging its obligations and re-imbursing the stockholders." And that the said Walsh, thereupon, offered the following resolution, which was adopted: " Whereas any demurrer might postpone the sale of the property of the Co. disadvantageously, and thereupon materially affect the interest of the Co., therefore, Resolved, That the directors, if in their judgment it may seem judicious, be and are hereby requested to direct a decree to be issued allowing the property without let or demurrer to be sold under the mortgage."

And the said petitioner further showed, that he believed that said resolution offered by said Walsh was offered at the suggestion and instigation of said D. S. Brown, and that he voted for the same, and that it would not have been adopted without his concurrence; and that the object of said resolution was to pre-

vent any defence being made in the name of said New England Manufacturing Co. to the said bill of complaint of said S. G. Potts, to obtain a speedy decree on said mortgage and thereupon to cause a sale of the said mill, &c., of said Co., in order that he, the said Brown, may purchase the same at Sheriff's sale.

That said petition showed, that, if a sale of said property should be made by the Sheriff in the present state of the money market, and extreme depression in the business of manufacturing, the said property will be greatly sacrificed.

That, inasmuch as the said Brown, by means of his friends and agent, the said Walsh and Burgh, has the entire control of said Co., and will not allow any answer or defence to be put in by the said New England Manufacturing Co. to the bill of complaint of said Potts, the petitioner has no opportunity of protecting his interest involved in said suit, or of being heard before this Court, except under the order and direction of this Court, the petitioner prayed that he might be made a party defendant to the said bill of complaint, and be permitted to answer the said bill, in his own name, as one of the stockholders of said Co., or to answer it in the name of said New England Manufacturing Co., or be permitted to adopt such other method of presenting a true statement of the facts in relation to said mortgage and the matters involved in said bill as his interest shall require.

That the petitioner would have presented his petition earlier, had he not hoped and expected that a compromise would be effected. That negotiations for a compromise with said Brown were pending until yesterday.

The bill states the hearing on said petition; and that the Chancellor, on the 30th June, 1849, ordered that this complainant, Frederick A. Vandyke, Jr., be permitted, as one of the stockholders of said New England Manufacturing Co., to answer the said bill filed by said Potts; and that he be made and deemed a party thereto for that purpose. That he, accordingly, filed an answer to said bill, and that the said suit is still pending. That said Potts is only the nominal complainant in said bill, being only the trustee of said D. S. Brown, R. F. Walsh, George F.

Peabody and Charles Peaslee, trading under the name of D. S. Brown & Co.

That, in and by the answer thus filed by this complainant to the said bill of said Potts, this complainant admitted the execution of said mortgage and bond to said Potts, but denied the legality and validity thereof, and set out, substantially, the same matters and facts in relation thereto as are set forth in the said petition of this complainant; which petition, and which answer to the said bill of said Potts he prays may be considered as part of this bill.

That, in and by the said answer, it was set out, and this complainant here again reiterates, and charges and says, that he is informed and believes, that, although the said D. S. Brown & Co. may have paid the drafts mentioned in said declaration of trust of said Potts, to the said Mechanics' Bank in Trenton, before the said New England Manufacturing Co. had placed money or funds in their hands to pay the whole of said drafts, or the whole amount of money therein named, yet that said F. A. Vandyke, Jr., doth not admit that the said New England Manufacturing Co. is indebted to the said D. S. Brown & Co. in the amount of said drafts so paid by them. On the contrary, the said Vandyke shows, that the said D. S. Brown & Co. were the commission merchants, factors and agents to whom the said New England Manufacturing Co. assigned their manufactured goods for sale, and that, for a long time previous to the date of said drafts, the said New England Manufacturing Co. had been in the practice of sending their manufactured goods to the said D. S. Brown & Co. for sale on commission; and that the said New England Manufacturing Co. continued to consign their manufactured goods to the said D. S. Brown & Co. after the date of said drafts up to the time of the maturity of said drafts and afterwards; and that the said D. S. Brown & Co. had, previous to the maturity of said drafts, sold large amounts of said manufactured goods, and had received therefor large sums of money and notes or drafts and funds equivalent to and received by them in lieu of money; and that the said D. S. Brown & Co. had in their hands, at the time of the payment by them of the said

drafts to the said Mechanics & Manufacturers Bank at Trenton, as said Vandyke verily believes and charges, a large amount of monies and funds belonging to the said New England Manufacturing Co., which ought to have been applied by said D. S. Brown & Co. to the payment of said drafts, and which, but for their gross negligence, they might have so applied.

And this complainant insists, that, if said bond and mortgage should be deemed valid by this Court, it should only be held and deemed a security for so much as shall be found to have been due from said New England Manufacturing Co. to said D. S. Brown & Co. at the time of the payment of said drafts, on a full statement and settlement of the accounts between the said D. S. Brown & Co. and the said New England Manufacturing Co. ; and that it should be referred to a Master to take and state an account between said D. S. Brown & Co. and said New England Manufacturing Co., of all the goods sent by said New England Manufacturing Co. to the said D. S. Brown & Co., previous to the maturity of said drafts, to be sold on commission, and of the amount of their sales, and of their commissions, charges and expenses thereon, in order that justice may be done to the said New England Manufacturing Co. and to this complainant and the other stockholders of said Co.

And this complainant, in his said answer to said bill, stated, and here reiterates and charges, that the goods manufactured by said New England Manufacturing Co., and sent to said D. S. Brown & Co. for sale, were cotton cloths, not printed, and that said D. S. Brown, or said D. S. Brown & Co., without any authority from said New England Manufacturing Co., sent the said goods to a printing establishment, in which, as said Vandyke is informed and believes, the said D. S. Brown had an interest, and had the said cotton cloths printed, thereby adding to the expense of said goods from 3 to 5 cents a yard ; and that, on the sale of said goods, the said Brown & Co. charged their commission on the amount of the price of said goods, thus enhanced by the additional expense of such printing, so done without the authority of the said New England Manufacturing Co. ; and that, for the printing of said goods, the said D. S. Brown &

41

Co. paid more than the ordinary and fair price for printing such kinds of cotton goods, and more than the same could have been done for at other printing establishments in which the said David S. Brown was not interested. And that, after the said D. S. Brown, or D. S. Brown & Co., had thus illegally and improperly had said goods printed, when said D. S. Brown & Co. sold said goods, if the price of such goods in the market was low, they would charge said New England Manufacturing Co. with all the expense of printing said goods ; but if the price of printed goods was high, they would only credit said New England Manufacturing Co. with the value of cotton goods, at their own estimate, and take the benefit of the advanced price of the printed goods, themselves. And that, by means of this illegal conduct, and other illegal practices, extortionate commissions and usurious interest of said D. S. Brown and D. S. Brown & Co., they swelled their account against the said New England Manufacturing Co. to a much larger amount than it ought to have been, and, as said Vandyke verily believes, to an amount of nearly $40,000 more than it should have been.

That, after the acceptance of said drafts by said D. S. Brown & Co., and before the filing of the said bill by the said Stacy G. Potts, and on or about January 1, 1847, the said Benjamin Tredick ceased to be a member of said firm of D. S. Brown & Co.

This bill states, that, after the decision of this Court on the said petition of said Vandyke was known to the Solicitor and Counsel of said D. S. Brown & Co., the said D. S. Brown & Co., with the view and intention, as this complainant believes, of evading the said order made on said petition, and to prevent an investigation of their accounts with said New England Manufacturing Co., and of their illegal, unjust and fraudulent practices in regard to their business with said Co., caused a summons to be issued out of the Supreme Court, in the name of David S. Brown, Robert F. Walsh, Benjamin F. Tredick, George F. Peabody and Charles Peasely, trading under the name of David S. Brown & Co., against the said New England Manufacturing Co., in an action of trespass on the case for $30,000, returnable to the 3d Tuesday of July, 1849. That the said summons was

issued by Peter D. Vroom, Esq., as the Attorney of said D. S. Brown & Co., who acted as the Counsel of said D. S. Brown & Co. in the said case of Potts against New England Manufacturing Co., and argued against the granting the prayer of the petition of said Vandyke, this complainant, in the said case.

That, since the said argument on the said petition, the said D. S. Brown has caused himself to be elected President of said New England Manufacturing Co., and that, although he resides in Philadelphia, and does business there, and although the said New England Manufacturing Co. have not been driving their mill or carrying on any manufacturing business since the 1st of May last, (1849,) yet the said summons was served, by the Sheriff of Mercer, on the said D. S. Brown, President of said New England Manufacturing Co. ; and this complainant believes and charges, that the said D. S. Brown came to Trenton for the purpose of enabling said Sheriff to serve said summons on him, and thereby facilitate the obtaining a judgment against said New England Manufacturing Co.   That a declaration has been filed in said suit in the Supreme Court, founded on the said three drafts drawn on said D. S. Brown & Co. by the said New England Manufacturing Co., in favor of Shortridge, the Treasurer of said Co., alleged to have been accepted and paid by said D. S. Brown & Co. ; being the same drafts and sums of money mentioned in the declaration of trust executed by said Potts, and to secure the payment of which the bond and mortgage, set forth in the bill of complainant of said Potts were given.   That said declaration was filed August 24, 1849, and that the New England Manufacturing Co. have not caused any appearance to be entered or plea filed for them in said suit against them in the Supreme Court.

That said D. S. Brown & Co., having procured the said D. S. Brown to be elected President of said New England Manufacturing Co., and also procured the election of a majority of directors either directly interested in their Co. or subservient to their wishes and under their control, will not authorize or permit any appearance to be entered or plea filed for said New England Manufacturing Co., or any defence to be made in said

suit in the Supreme Court against their demands; and that it is the intention of said D. S. Brown & Co. to prevent any investigation into the justice or legality of their claims and demands against said New England Manufacturing Co., in said suit in the Supreme Court, by causing a judgment by default to be entered at the present term of the Supreme Court against the said New England Manufacturing Co. for want of a plea, and thus to establish against said New England Manufacturing Co. their claims to a much larger amount than is fairly and equitably due to said D. S. Brown & Co. on a full and fair investigation and settlement of their accounts with the said New England Manufacturing Co.

That, from the best information the complainant can obtain on the subject, he verily believes, if a fair statement and settlement of said accounts can be had under the direction of this Court, the New England Manufacturing Co. would appear to be the creditor, and not the debtor of the said D. S. Brown & Co.

That this complainant believes and charges, that the said D. S. Brown and Robert F. Walsh, two of the members of said firm of D. S. Brown & Co., failing to accomplish their plan of obtaining a sale of the mill and premises of said New England Manufacturing Co. by means of the said bill of foreclosure filed by said Potts, have caused said suit to be brought in said Supreme Court for the purpose and with the intention of having the property of said New England Manufacturing Co. sold at Sheriff's sale, in order that they, or the said D. S. Brown, or the said D. S. Brown & Co., may purchase the same at a price below its fair value.

The bill prays, that the said D. S. Brown & Co. may come to a fair settlement of their accounts with the said New England Manufacturing Co. as agents, factors and commission merchants of said New England Manufacturing Co., and otherwise, under the directions of this Court; and that the said D. S. Brown, Robert F. Walsh, Benjamin F. Tredick, George F. Peabody and Charles S. Peasley may be restrained by injunction from further prosecuting their said suit in the Supreme Court against

the New England Manufacturing Co., until the further order of this Court; and for such other and further relief, &c.

The New England Manufacturing Co. is, also, made defendant in this bill.

The defendants composing the firm of D. S. Brown & Co. put in an answer; and testimony was taken on both sides; and the cause was brought to hearing on the pleadings and evidence.

*W. Halsted* for the complainant.    He cited 11 *Metcalf,* 210; 13 *Ves.* 430; 3 *Hen. and Mun.* 89; 6 *John. Ch.* 413; 2 *Ib.* 210; 4 *Barb. Rep.* 626 2 *Port. Rep.* 351; 5 *Dana.* 54; 1 *Hoff. Ch.* 294; *Paley on Agency,* 94, 98, 99; 5 *Com. Dig. Factor, B.*; 11 *Mass. Rep.* 27, 97, 228; 5 *John. Ch.* 429, 532; 8 *N. Hamp. Rep.* 504; 4 *Cow.* 645; 1 *Sim. and Stuart,* 333; 5 *Denio,* 567, 577; 4 *John. Ch.* 596, 7; 1 *Kelley's Rep.* 376; 27 *Maine Rep.* 509; 2 *Green's Ch.* 300; 1 *Halst. Rep.* 408; *Beam Pl. in Eq.* 229, 233; *Willey's forms,* 550; *Story's Eq. Pl.* 802; 7 *Paige,* 573; 15 *Wend.* 83; 1 *Ch. cases,* 55; 2 *Freeman's Rep.* 183.

*C. S. Green* and *P. D. Vroom* for the defendants D. B. Brown & Co.    They cited 2 *Edw. Ch.* 13, 23; *Ang. and Ames on Corp.* 158, 170, sec. 9; 3 *Bro. Ch.* 439; 2 *Anstruther,* 495; 5 *Barnw. & Ald.* 34, in 7 *Eng. C. L. Rep.* 13; 9 *Ves.* 223; 4 *Carrington and Payne,* 124, in 19 *Eng. C. L. Rep.* 304; 3 *Campb. Rep* 467, 402; *Baldw. Rep.* 540; 5 *Cow.* 587; 1 *Wend.* 521; 15 *John Rep.* 409; *Ang. & Ames on Corp.* 131, 2; *Pally on Agency,* 113, 114, and note; 4 *Mason's Rep.* 296; *Livermore on Agency,* 50; 1 *Mad. Ch. Pr.* 82, 3; 1 *Story's Eq. Pl.,* sec. 523, 4, 5; *Paley on Agency,* 52, and note; 7 *Cranch,* 147; 9 *Pick. Rep.* 212; 2 *Freeman's Rep.* 31; 3 *Wash.* 350, 402; *Story's Eq. Pl.,* sec. 798, and note.

THE CHANCELLOR.    A. and B. own a manufacturing establishment, each owing half, in common.    They obtain an act incorporating a company; subscribe, each, for half the stock,

excepting four shares, which are put in the names of four other persons, merely for the purpose of having a sufficient number of stockholders to organize the Company in the manner directed by the act of incorporation.   After the organization of the Company, by the election of Directors, A. and B. continue to conduct the business as before the act of incorporation, by and between themselves as individuals, the Company not acting by its Board. In this state of things, an account is made out by A. against the Company, and B. assents to it; there being no action of the Board assenting to it.   Afterwards, C. became a *bona fide* assignee of the interest of B. in the Company, and asks an account of the dealings between A. and the Company.   Does the assent of B., so given to the account of A. against the Company, bar the Company, or C. as a stockholder of the Company, from the time of such assent by B. to the said account of A. against the Company ?   Is it a case in which C. should be put to filing a bill to surcharge and falsify the account of A. ?

Persons obtaining, by an act of incorporation, the advantages of an incorporation, should be held, and that strictly, to conduct their business as a corporation, and in the manner required by the act of incorporation.   One of the advantages of a corporation is, that the stockholders can only lose the amount invested in the corporation ;   their other property not being liable for the debts of the Company.   But two persons doing business in the manner above stated, under an act of incorporation, are in reality but an ordinary partnership, and should be liable to debts to the whole amount of their property, as well that invested in such business as that possessed by them disconnected with that business.   The obtaining an act of incorporation by two men, to be used by them as above stated, is a fraud upon the community.   And it would be encouraging such fraud to permit them to conduct their business simply as two individuals composing an ordinary partnership conduct their business.   They must be held to conduct their business as a corporation, and be governed by the law of corporations.

Brown & Co. were commission merchants in Philadelphia, to whom the New England Manufacturing Co. sent goods manu-

factured by them, in their brown state, to be sold. Brown & Co. sent some of these goods to a printing establishment in Pennsylvania, and had them printed, and then sold them.

If Brown & Co. were not authorized to print the brown goods, I think the course to be taken will be, that where the printing was advantageous to the Manufacturing Company, they shall have the benefit of it; that is, if by the sale of printed goods more is received than ₂sufficient to pay for the goods and the printing, the printing shall be deducted, and the residue go to the account of the Manufacturing Company; and if there is a loss by printing, the Manufacturing Co. be credited with the value of the goods in the brown state. No commissions on the expense of printing should be allowed.

My impression is, that Brown & Co. were not authorized to cause the goods to be printed.

The credit which Brown & Co. claim for short measure in the goods sent them must be struck out, under the testimony. There is no proper proof to contradict Benson as to measure.

The complainant's stock was transferred to him July 7th, 1847. The last of the three drafts did not become due till October 25th, 1847. I think the complainant entitled to an account, in order to ascertain whether D. S. Brown & Co. had funds on that day.

In December, 1845, the Manufacturing Co. owed, by Brown's own statement, but $1,597.64; and that was paid. From that time the charges for interest amount to over $10,000. This cannot be right.

The suit in the Supreme Court is for the recovery of the amount of three drafts drawn by the New England Manufacturing Co. on D. S. Brown & Co., and accepted by D. S. Brown & Co. *Prima facie* the acceptance shows that the New England Manufacturing Co. had funds in the hands of Brown & Co. to the amount of the drafts. The plaintiffs in the suit in the Supreme Court allege, that the drafts were accepted by D. S. Brown & Co. for the accommodation of the New England Manufacturing Co., and were paid without funds of said Manufacturing Co. in their hands. The complainant in this suit, a stockholder

of the said New England Manufacturing Co., denies this allega-- tion. The bill and the facts admitted show, that it was impracticable for this complainant or the said New England Manufacturing Co. to make any defence in the said suit at law. And under these circumstances the complainant comes here for an account between said Brown & Co. and the said New England Manufacturing Co. I see no reason why the account should not extend subsequent to the maturity of the drafts : the whole case should be settled here.

Brown & Co. sent some of the goods, received by them in Philadelphia as commission merchants for sale, to New York and Boston, for sale, and the merchants there, to whom they were sent, charged 5 per cent. for sale and guarantee; and Brown & Co. charge 2 1-2 for guaranteeing the goodness of the New York or Boston merchants. This cannot be allowed. If a commission merchant in Philadelphia to whom goods are sent for sale, at 5 per cent. commission on sales and for guaranteeing sales, receives more than he can sell in that market, he is not at liberty to send what he cannot sell in Philadelphia to New York, to a commission merchant there, and allow him the 5 per cent. for sale and guarantee, and charge the consignor 2 1-2 per cent. himself. If he were, he might, on goods sent to Philadelphia to him for sale, after making his 5 per cent. on all that could be sold in Philadelphia, get 2 1-2 per cent. on all that could be sold in other markets, though commission merchants in those markets sell at 5 per cent. on sales and guarantee.

A manufacturing company would not send goods through Philadelphia to New York and Boston, and be thus subjected to 7 1-2 per cent., when they could send them direct to New York and Boston and have sales made and guaranteed for 5 per cent.

The manufacturer cannot be supposed to intend to send to one market more than can be sold there. The course would be, after stocking that market, for the manufacturer himself to send to other markets.

It was said in argument, that where the complainant goes for a general account and it turns out there has been a settled account, he must amend, and surcharge and falsify. This supposes that

an account is given by the defendants.   How else can he amend, and  surcharge and falsify ?   No account has  been given here ; and a settled account has  not  been pleaded, or properly set up by answer.

I do not think it safe to direct that rests shall be made at any certain periods.   It may be that at the end of a year the balance against the manufacturing  company is  $10,000,  and  that in  a month after, sales are made to $10,000.

It will  be left to  the  Master to state  the  interest account as the nature of the account, the times of advances and the times of receipts from sales being regarded, requires.

Account ordered.